## Case No. 15,194.

### UNITED STATES v. GAY'S GOLD.

[1 Woods. 55.] [1]

Circuit Court, D. Louisiana.   June, 1870. [2]

FORFEITURE—TRANSPORTING GOLD TO TERRITORY IN INSURRECTION.

An attempt was made to transport without a license, and contrary to the 5th section of the act of congress of July 13, 1861 [12 Stat. 257], and 3d section of the act of May 20, 1862 [Id. 404], property from the United States to the territory declared to be in insurrection. *Held,* that such property becomes subject to forfeiture to the United States, notwithstanding the insurrectionary district to which it was being conveyed was at the time in the possession of the federal forces.

[Appeal from the district court of the United States for the district of Louisiana.] At chambers.

Alanson B. Long, U. S. Atty.
Geo. L. Bright, for claimant.

WOODS, Circuit Judge.   This is a libel filed against $5,000 in gold seized on board the steamer Empire Parish, on the Mississippi river, in the port of New Orleans.   The libel charges that the gold was being transported to Bayou Sara, in the state of Louisiana, a place declared to be in insurrection, contrary to the 5th section of the act of congress of July 13, 1861 (12 Stat. 257), and the 3d section of the act of May 20, 1862 (12 Stat. 404). The facts are, that the gold was taken on board the Empire Parish, by one Smith Freeman, for the purpose of carrying the same up the river, either to Bayou Sara, or to the residence of the owner of the gold, E. J. Gay, near the village of Placquemine, both Bayou Sara and Placquemine being in a section declared to be in insurrection.   The defense seems to be, that the purpose of Freeman was to carry the gold to its owner [Edward J.] Gay, who resided a mile and a half below Placquemine, on the right bank of the Mississippi river, and that at the time Placquemine and its neighborhood were held by the Union forces.

Admitting all that the testimony for the claimant tends to establish, yet it is clear that this gold should be forfeited.   There is no pretense that its transportation was authorized by any permit or license whatever. It is admitted that the purpose was to transport the same to a place declared to be in insurrection, and whether such place was held by troops of the United States or not can make no difference.   The act of congress forbids the transportation of gold to any place declared to be in insurrection, whether held by Union troops or not, and the proclamation of the president, April 2, 1863 [13 Stat. 730] declares the whole state of Louisiana to be in insurrection, except the port of New Orleans.   So it is clear that here was a transportation commenced of property from a section not in insurrection to a section declared to be in insurrection, contrary to the plain provisions of the act of July 13, 1861, and by that act declared to be forfeited to the United States.

I am satisfied from the testimony that it was the purpose of Gay, the claimant, to use this gold in the purchase of cotton in the insurrectionary districts.   The pretense that he ordered his gold from its safe depository in New Orleans to his plantation, merely to hoard it, is too transparent to deceive any one.   Let a decree be entered against the gold and the principal and sureties on the release bond.

[The case was taken, on an appeal to the supreme court, where the decree of this court was affirmed. 13 Wall. (80 U. S.) 358.]